IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

MARQUITA F.,[1]
    Plaintiff,

        v.                                          Civil No. 3:20cv456 (JAG)

KILOLO KIJAKAZI,[2]
Acting Commissioner of Social Security,
    Defendant.

**REPORT AND RECOMMENDATION**

This is an action seeking review of the decision of the Commissioner of Social Security ("Commissioner") denying Plaintiff's application for disability insurance benefits and supplemental security income under the Social Security Act. Marquita F. ("Plaintiff"), thirty years old at the time of her benefits application, last worked as a front desk supervisor and a guest services representative at a hotel. (R. at 34, 72.) Plaintiff suffers from an annular tear in the neck, a herniated cervical disc, neuralgia, panic attack disorder, depression, paresthesia, shoulder pain, disc protrusion, disc bulge, and pain in her left leg. (R. at 72–73.) Plaintiff asserts that her impairments render her unable to work on a sustained basis. (R. at 51.)

On August 21, 2019, an Administrative Law Judge ("ALJ") denied Plaintiff's application for disability benefits and supplemental security income. (R. at 36.) This matter comes before the

---

[1] The Committee on Court Administration and Case Management of the Judicial Conference of the United States has recommended that, due to significant privacy concerns in social security cases, federal courts should refer to claimants only by their first names and last initials.
[2] On July 9, 2021, Kilolo Kijakazi became the Acting Commissioner of Social Security. Pursuant to Federal Rule of Civil Procedure 25(d), Acting Commissioner Kilolo Kijakazi should be substituted for former Commissioner Andrew M. Saul as the defendant in this matter.

Court for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) on the parties' cross motions for summary judgment, rendering the matter ripe for review.[3]

Plaintiff now seeks review of the ALJ's decision, arguing that the ALJ erred in evaluating the opinions of Plaintiff's psychiatrist, Dr. Alan Ali, M.D., and Plaintiff's primary care provider, Dr. Karissa Hackelton, M.D., and that the ALJ also erred in considering the severity of Plaintiff's anxiety at step two of the sequential evaluation process. (Pl.'s Brief in Supp. of Mot. For Summ. J. 12-20, ECF No. 23 ("Pl.'s Mem.").) For the reasons set forth below, the Court RECOMMENDS that Plaintiff's Motion for Summary Judgment (ECF No. 22) be GRANTED, that the Defendant's Motion for Summary Judgment (ECF No. 24) be DENIED and the final decision of the Commissioner be VACATED and REMANDED.

## I. PROCEDURAL HISTORY

Plaintiff filed an application for disability insurance benefits and supplemental security income on July 31, 2017 and November 27, 2017, respectively, alleging disability due to an annular tear in the neck, a herniated cervical disc, neuralgia, panic attack disorder, depression, paresthesia, shoulder pain, disc protrusion, disc bulge, and pain in her left leg. (R. at 72–73, 195, 197.) The Social Security Administration denied Plaintiff's claim initially on September 28, 2017, and again upon reconsideration on June 22, 2018. (R. at 87, 122, 124.) Plaintiff requested a hearing before an ALJ, and a hearing was held on July 23, 2019. (R. at 46, 144.) On August 21, 2019, the ALJ issued a written opinion, denying Plaintiff's claim and concluding that Plaintiff did not qualify

---

[3] The administrative record in this case remains filed under seal, pursuant to E.D. Va. Loc. R. 5 and 7(C). In accordance with these rules, the Court will exclude personal identifiers such as Plaintiff's social security number, the names of any minor children, dates of birth (except for year of birth), and financial account numbers from this Report and Recommendation, and will further restrict its discussion of Plaintiff's medical information only to the extent necessary to properly analyze the case.

as disabled under the Social Security Act. (R. at 22-36.) On October 21, 2019, Plaintiff requested review of the ALJ's decision, and on April 16, 2020, the Social Security Administration Appeals Council denied this request, rendering the ALJ's decision as the final decision of the Commissioner. (R. at 1–5, 194.) Plaintiff now seeks judicial review pursuant to 42 U.S.C. § 405(g).

## II. STANDARD OF REVIEW

This Court upholds an ALJ's Social Security disability determination if: "(1) the ALJ applied the correct legal standards and (2) substantial evidence supports the ALJ's factual findings." *Arakas v. Comm'r, Soc. Sec. Admin.*, 983 F.3d 83, 94 (4th Cir. 2020) (citing 42 U.S.C. § 405(g) and *Pearson v. Colvin*, 810 F.3d 204, 207 (4th Cir. 2015)). "Substantial evidence is that which a reasonable mind might accept as adequate to support a conclusion." *Pearson*, 810 F.3d at 207 (internal quotation marks omitted). Substantial evidence thus requires more than a scintilla of evidence, but less than a preponderance of the evidence. *See Hancock v. Astrue*, 667 F.3d 470, 472 (4th Cir. 2012). Between these two evidentiary thresholds lies a "zone of choice" where the ALJ's decision can go either way without interference by the courts. *See Dunn v. Colvin*, 607 F. App'x. 264, 274 (4th Cir. 2015) (quoting *Clarke v. Bowen*, 843 F.2d 271, 272–73 (8th Cir. 1988)). "'In reviewing for substantial evidence, we do not undertake to re-weigh conflicting evidence, make credibility determinations, or substitute our judgment' for the ALJ's." *Arakas*, 983 F.3d at 95 (quoting *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996)).

In considering the decision of the ALJ based on the record as a whole, the court must take into account "whatever in the record fairly detracts from its weight." *Breeden v. Weinberger*, 493 F.2d 1002, 1007 (4th Cir. 1974) (quoting *Universal Camera Corp. v. N.L.R.B.*, 340 U.S. 474, 488 (1951)). If substantial evidence in the record supports the ALJ's findings as to any fact, it is binding on the reviewing court regardless of whether the court disagrees with such findings. *See Hancock*,

667 F.3d at 476. "A factual finding by the ALJ is not binding if it was reached by means of an improper standard or misapplication of the law." *Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987). The court must reverse the decision if substantial evidence in the record does not support the ALJ's determination or if the ALJ has made an error of law. *See id*.

### III. THE ALJ'S DECISION

On July 13, 2019, the ALJ held a hearing during which Plaintiff, represented by counsel, and a vocational expert testified. (R. at 46–71.) On August 21, 2019, the ALJ issued a written opinion, finding that Plaintiff did not qualify as disabled under the Social Security Act. (R. at 22–36.) The ALJ followed the five-step evaluation process established by the Social Security Act in analyzing Plaintiff's disability claim. (R. at 24-36.) *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4); *Mascio v. Colvin*, 780 F.3d 632, 636 (4th Cir. 2015) (describing the ALJ's five-step sequential evaluation).

According to those regulations, at step one, the ALJ looks at the claimant's current work activity. *See* 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). At step two, the ALJ asks whether the claimant's medical impairments meet the regulations' severity and duration requirements. *See id*. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). Step three requires the ALJ to determine whether the medical impairments meet or equal an impairment listed in the regulations. *See id.* §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). Between steps three and four, the ALJ must assess the claimant's residual functional capacity, accounting for the most the claimant can do despite her physical and mental limitations. *See id*. §§ 404.1545(a), 416.945(a). At step four, the ALJ assesses whether the claimant can perform her past work given his residual functional capacity. *See id*. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). Finally, at step five, the ALJ determines whether the

claimant can perform any work existing in the national economy. *See id.* §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).

In the instant case, at step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity from her alleged onset date of October 27, 2016. (R. at 25.) At step two, the ALJ determined that Plaintiff suffered from the following severe impairments: cervical spine bulge without significant stenosis, annular tear of the cervical spine, degenerative disc disease of the lumbar spine, scoliosis, and obesity. (R. at 25.) The ALJ determined that Plaintiff also suffered from generalized anxiety disorder and major depressive disorder; however, the ALJ concluded that those impairments were not severe because they produced only mild mental limitations for Plaintiff. (R. at 25.) At step three, the ALJ determined that neither of these impairments, individually or in combination, met or equaled a disability listing in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. at 26-27.)

After step three, the ALJ determined Plaintiff's residual functional capacity based on an evaluation of the evidence, including medical records, Plaintiff's testimony, and the findings of treating and examining health care providers. (R. at 27–34.) Based on this evidence the ALJ determined that Plaintiff retained the ability to perform light work with the following limitations:

> [Plaintiff] is able to stand and walk for four hours in an eight-hour workday; occasionally stoop, kneel, crouch, crawl, and climb ramps and stairs; never climb ladders, ropes, and scaffolds; frequently reach in all directions, handle, and finger with the left upper extremity; and is limited to no more than occasional exposure to extreme cold, extreme heat, humidity, and wetness.

(R. at 27–34.) The ALJ explained this determination by extensively summarizing the evidence in the record and holding that the objective medical findings in the record demonstrated that Plaintiff had functional limitations that were not as severe as Plaintiff alleged. (R. at 27–34.)

Based on this determination, the ALJ then concluded, at step four, that Plaintiff's limitations prevented her from performing any of her past relevant work. (R. at 34.)

At step five, the ALJ considered whether Plaintiff could perform jobs existing in significant numbers in the national economy. (R. at 34-35.) The ALJ weighed the testimony of the vocational expert, who opined that Plaintiff could perform the requirements of occupations such as storage facility rental clerk, and cashier. (R. at 35.) The ALJ determined that, given Plaintiff's age, education, work experience, and residual functional capacity, Plaintiff can make a successful adjustment to other work that exists in significant numbers in the national economy. (R. at 35.) The ALJ, therefore, concluded that a finding of "not disabled" was appropriate. (R. at 35.)

## IV. ANALYSIS

Plaintiff's appeal to this Court challenges the ALJ's finding of "not disabled," arguing that the ALJ erred in several respects. Plaintiff contends that the ALJ erred in evaluating the medical opinion evidence in two ways: first, that the ALJ failed to explain how Dr. Hackelton's opinion was unsupported by the record, and second, that the ALJ failed to evaluate the persuasiveness of Dr. Ali's opinion. (Pl.'s Mem. at 12-20.) Plaintiff also contends that the ALJ failed to sufficiently consider the severity of Plaintiff's anxiety and panic attacks at step two. (Pl.'s Mem. at 15-16.) For the reasons set forth below, the ALJ erred in denying Plaintiff's application for benefits.

### A. The ALJ Erred in Evaluating Dr. Hackelton's and Dr. Ali's Opinions.

Under the Social Security Administration regulations, the ALJ must consider each medical opinion in the record. 20 C.F.R. §§ 404.1520c, 416.920c ("We will articulate in our determination or decision how persuasive we find all of the medical opinions . . . in your case record."). The regulations define a medical opinion as follows:

> A medical opinion is a statement from a medical source about what
> you can still do despite your impairment(s) and whether you have

6

>one or more impairment-related limitations or restrictions in the [following] abilities . . .
>
>(i) Your ability to perform physical demands of work activities, such as sitting, standing, walking, lifting, carrying, pushing, pulling, or other physical functions (including manipulative or postural functions, such as reaching, handling, stooping, or crouching);
>
>(ii) Your ability to perform mental demands of work activities, such as understanding; remembering; maintaining concentration, persistence, or pace; carrying out instructions; or responding appropriately to supervision, co-workers, or work pressures in a work setting;
>
>(iii) Your ability to perform other demands of work, such as seeing, hearing, or using other senses; and
>
>(iv) Your ability to adapt to environmental conditions, such as temperature extremes or fumes.

*Id*. §§ 404.1513(a)(2), 416.913(a)(2). A medical opinion does not include "judgments about the nature and severity of [the claimant's] impairments, . . . medical history, clinical findings, diagnosis, treatment prescribed with response, or prognosis." *Id*. § 404.1513(a)(3) (defining these categories of information as "other medical evidence").

Under the regulations,[4] the ALJ must evaluate each medical opinion and articulate the "persuasiveness" of all medical opinions by considering five factors: (1) supportability; (2) consistency; (3) relationship with the claimant; (4) specialization; and (5) "other factors that tend to support or contradict the medical opinion[,]" including familiarity with the other evidence or understanding of disability program policies and requirements. *Id*. §§ 404.1520c, 416.920c(a), (b), (c)(1)– (5). Supportability and consistency are the "most important" factors, and the ALJ must discuss how they considered these factors in the written opinion. *Id*. § 416.920c(b)(2).

---

[4] Because Plaintiff filed her disability claim after March 27, 2017, Section 416.920c, which sets forth revised rules regarding the assessment of medical opinion evidence, applies here.

7

For supportability, "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are," the "more persuasive the medical opinion[]" will be. *Id*. § 416.920c(c)(2). Similarly, for consistency, "[t]he more consistent a medical opinion[]" is with "evidence from other medical sources and nonmedical sources," the "more persuasive the medical opinion[]" will be. *Id*. § 416.920c(c)(2).

The ALJ may explain her consideration of the other factors but is only required to do so when contrary medical opinions are equally persuasive in terms of both supportability and consistency. *See id*. § 416.920c(b)(3). In that situation, the ALJ must then articulate the remaining factors and their application to the persuasiveness of the medical opinion. *See id*.

1. The ALJ Erred by Failing to Sufficiently Explain Why Dr. Hackelton's Opinion was Unpersuasive.

Plaintiff argues that the ALJ erred in evaluating Dr. Hackelton's August 2018 Medical Source Statement.[5] (Pl.'s Mem. at 17-20, ECF 23). Plaintiff contends that the ALJ improperly compared her residual functional capacity determination to Dr. Hackelton's opinion, and otherwise failed to provide an explanation why she determined Dr. Hackelton's opinion was unpersuasive. (Pl.'s Mem. at 17-19, ECF 23). In response, Defendant contends that substantial evidence supports the ALJ's analysis of Dr. Hackelton's opinion. (Def.'s Mem. at 26-30, ECF 24). Defendant argues that the ALJ properly cited to evidence in the record that "generally" showed "normal" findings. (Def.'s Mem. at 28-29, ECF 24.)

In August 2018, Dr. Hackelton submitted a Medical Source Statement in which she opined Plaintiff: (1) would be off task fifteen percent of the day; (2) could walk one city block before needing to rest or experiencing pain; (3) could sit or stand for fifteen minutes before needing to

---

[5] Although the ALJ evaluated several opinions by Dr. Hackelton (R. at 30, 32), Plaintiff appears to only dispute the ALJ's analysis of the August 2018 Medical Source Statement. (Pl.'s Mem. at 17-20.)

8

change positions; (4) could sit, stand, or walk for less than two hours per day; (5) must walk for seven minutes every twenty minutes; (6) would need to shift positions at will; (7) would need a five to ten minute break twice per hour; (8) would need to elevate her left leg at hip height while sitting; (9) would need to elevate her legs the entire day if she was performing a sedentary job; (10) needed to use a cane with walking and standing; (11) could rarely lift up to ten pounds and never lift more than 20 pounds; (12) could never twist, crouch/squat, or climb stairs or ladders, and rarely stoop/bend; (13) could only use her left fingers for fine manipulation and left hand for grasping, turning, and twisting objects ten percent of the time; (14) could reach overhead with her right arm twenty percent of the time but could never reach overhead with her left arm; and (15) would be absent from work more than four days per month. (R. at 712-13.) Dr. Hackelton also opined that Plaintiff's anxiety "somewhat" contributed to the severity of her symptoms and limitations. (R. at 711.)

In determining that Dr. Hackelton's August 2018 Medical Source Statement was unpersuasive, the ALJ concluded that Dr. Hackelton's conclusions "are not consistent with or supported by the record, which supports the claimant's ability to perform light work with additional limitations[.]" (R. at 32.) The ALJ reasoned that "[t]he record shows that the claimant generally appeared alert, oriented, and in no acute distress with intact gait and station, stable balance, normal sensation and reflexes, and generally full motor strength in the upper and lower extremities." (R. at 32.) The ALJ generally cited a number of exhibits in the record to support her conclusion that Dr. Hackelton's conclusions were unsupported by, and inconsistent with, the record.[6] (R. at 32.)

---

[6] Specifically, the ALJ cited exhibits B2F, B4F, B9F, B11F, B13F, B14F, B16F, B18F, B19F, B20F

The ALJ's evaluation of Dr. Hackelton's opinion fails to explain how the ALJ concluded that Dr. Hackelton's opinion was unsupported by, and inconsistent with, the record. The ALJ merely reiterated Dr. Hackelton's opinion, and stated the opinion was inconsistent with her own residual functional capacity determination without explaining what parts of the record Dr. Hackelton's opinion was inconsistent with or unsupported by. (R. at 32.) Although the ALJ generally cited ten exhibits—totaling 305 pages—to support her conclusion, the ALJ did not describe the contents of those exhibits, nor identify anything specific about them that contradicted the August 2018 Medical Source Statement. Such citation falls short of explaining adequately how Dr. Hackelton's opinion is inconsistent with and unsupported by the record.

This is particularly true where many pages of the cited exhibits support Dr. Hackelton's conclusions. (*See e.g.*, R. at 402 ("slow gait"), 414 ("impaired sensation"), 433 ("altered sensation"), 442 ("weakness in left upper extremity"), 518 ("fifteen-minute ambulation range"), 519 ("slow and antalgic gait"), 622 ("poor gait pattern with decreased cadence and step"), 633 ("poor gait pattern"), 647 ("stable gait with limp"), 708 ("very guarded gait"), 719 ("very guarded gait"), 721 ("very guarded gait"), 723 ("very guarded gait"), 760 ("weakness in left grip and left lower extremity"), 781 ("used walker"), 200 ("used walker")). The ALJ did not explain how these citations in support of the August 2018 Medical Source Statement factored into the weight given to the statement.

Thus, the ALJ's general citation to these exhibits, without more, does not allow the Court to meaningfully review the ALJ's conclusion that Dr. Hackelton's opinion was unpersuasive. *See Monroe*, 826 F.3d at 191. The ALJ's evaluation of Dr. Hackelton's opinion fails to build "an accurate and logical bridge from the evidence to her conclusion." *Monroe*, 826 F.3d at 1898

(quoting *Clifford v. Apfel*, 227 F.3d 863, 872 (7th Cir. 2000)). Accordingly, the ALJ erred in evaluating Dr. Hackelton's opinion.

    2.  <u>The ALJ Erred by Failing to Articulate the Persuasiveness of Dr. Ali's Opinion.</u>

Plaintiff argues that the ALJ failed to consider the persuasiveness of Dr. Ali's opinion. (Pl.'s Mem. at 14-15, ECF 23.) In response, Defendant contends that Dr. Ali's opinion did not constitute a medical opinion under the regulations because it merely restated Plaintiff's subjective complaints. (Def.'s Mem., ECF No. 24).

The record demonstrates that Dr. Ali treated Plaintiff for depression and anxiety initially in 2014, and Plaintiff resumed treatment in November 2016. (R. at 511.) Dr. Ali's initial evaluation demonstrated that Plaintiff was mildly anxious and had trouble sleeping. (R. at 511.) Dr. Ali also indicated that Plaintiff was experiencing worthlessness/guilt, indecisiveness, and a loss of interest/pleasure. (R. at 511.) Nonetheless, Plaintiff's thought process was intact, and she had no suicidal or homicidal ideations. (R. at 511.) Dr. Ali prescribed Xanax. (R. at 513.) Upon her subsequent examinations in May and July 2017, Dr. Ali noted that Plaintiff was alert and oriented, but her condition had either not changed or worsened. (R. at 509-10.) Dr. Ali continued Plaintiff's Xanax prescription. (R. at 510.) In November 2017, Dr. Ali again indicated that Plaintiff was alert and oriented, and that her condition had improved. (R. at 508.) Dr. Ali again continued Plaintiff's Xanax prescription. (R. at 508.)

On November 8, 2017, Dr. Ali authored a letter regarding Plaintiff's impairments. Therein, Dr. Ali indicated:

> [Plaintiff] has been under my care since 2015 and suffers from panic attacks due to chronic pain from a car accident where she suffered multiple injuries. Sleep has become increasingly difficult due to left arm and leg pain. She suffers from panic attacks that interfere with sleep. A typical panic attack occurs at night, waking her up out of

11

> sleep and leaving her feeling imminent doom and fear, as if she is having a heart attack, chest pain, sweating profusely, out of breath, and extreme heart rate with loss of balance. Panic attacks have interfered with her activities of daily living.
>
> She has increased fear that the attacks will increase as her pain increases. She avoids social gatherings and other social activities due to fear of pain and panic attacks. Her biggest fear is that she never knows when the next panic attack will happen because she is always in pain, especially at work because she has limited use and range of motion of upper limbs. She has now been taken ou[t] of work completely starting on November 2nd. [Plaintiff] cannot stand longer than 15 minutes before the pain becomes excruciating to her left leg and she is subject to fall. She is on Xanax 1 mg. to be taken twice daily.

(R. at 507.)

The ALJ recognized Dr. Ali's opinion in the record, stating that Dr. Ali

> [w]rote that she suffered constant pain, including in her left upper and lower extremities, and that she had limited range of motion in her upper extremities []. [Dr. Ali] also noted that [Plaintiff] was working part-time, but having difficulty at work due to her pain and range of motion limitations [].

(R. at 30.)

Upon review of Dr. Ali's letter, Dr. Ali did not provide a medical opinion regarding Plaintiff's mental limitations, but did provide a medical opinion regarding Plaintiff's physical limitations. Dr. Ali's statements that Plaintiff's "[p]anic attacks have interfered with her activities of daily living" and that Plaintiff "avoids social gathers and other social activities due to fear of pain and panic attacks" (R. at 507), fall within the category of "other evidence" by describing Dr. Ali's judgments about the nature and severity of Plaintiff's impairments and medical history.[7] *See* 20 U.S.C. § 404.1513(a)(3). However, Dr. Ali's letter contained statements that Plaintiff is "unable

---

[7] While the ALJ's failure to consider Dr. Ali's statements as a medical opinion is not an error, the ALJ's failure to consider evidence of this sort at all does constitute error at step two of the sequential evaluation process, as explained in further detail below.

12

to fulfill most of her duties at work because she has limited use and range of motion of upper limbs" and that Plaintiff "cannot stand longer than 15 minutes before the pain becomes excruciating to her left leg and she is subject to fall." (R. at 507.) It is apparent that these statements constitute an opinion on Plaintiff's "ability to perform physical demands of work activities, such as sitting, standing, [and] walking[.]" §§ 404.1513(a)(2)(i), 416.913(a)(2)(i). Defendant contends that the ALJ was under no obligation to review Dr. Ali's statements regarding Plaintiff's physical limitations because Dr. Ali only treated Plaintiff for her mental impairments. (Def.'s Mem. at 23, n.4.) While it may be true that Dr. Ali was in no position to opine on Plaintiff's physical limitations, it was incumbent upon the ALJ to articulate such a conclusion when evaluating the persuasiveness of Dr. Ali's opinion. *See* §§ 404.1520c(b)(1)-(2) (requiring the ALJ to explain the supportability and consistency of medical opinions in the record), 416.930c(b)(1)-(2) (same).

Because Dr. Ali's November 2017 letter constituted a medical opinion regarding Plaintiff's impairment-related limitations, the ALJ was required to articulate its persuasiveness by considering its supportability and consistency with the other evidence in the record, as well as Dr. Ali's treatment relationship, his specialization, and any other factors to support or contradict his opinion. *See* 20 U.S.C. §§ 404.1520c(b), (c)(2)-(5), 416.920c(b), (c)(2)-(5). While the ALJ mentioned the physical impairments set forth in Dr. Ali's opinion, she failed to articulate the persuasiveness of Dr. Ali's opinion. (R. at 30.) Thus, the ALJ erred by failing to articulate the persuasiveness of Dr. Ali's opinion.

### B. The ALJ Erred at Step Two of the Sequential Evaluation Process by Failing to Adequately Consider Evidence Related to Plaintiff's Panic Attacks.

Plaintiff argues that the ALJ's failure to evaluate Dr. Ali's opinion and failure to consider any of the mental limitations that Dr. Ali addressed demonstrates that the ALJ did not sufficiently consider the severity of Plaintiff's mental impairments at step two in the sequential evaluation

process. (Pl.'s Mem. at 12-20, ECF 23.) Defendant asserts that the ALJ properly determined Plaintiff's mental impairments were nonsevere at step two because they caused only minimal limitations with work activities. (Def.'s Mem. at 23-25, ECF 24.)  Defendant also argues that any such error at step two is harmless because the ALJ found that at least one of Plaintiff's impairments was severe. (Def.'s Mem. at 25, ECF 24.)

At step two of the sequential evaluation process, the ALJ must determine whether the claimant has a medically determinable impairment, or combination of impairments, that are severe. *See* 20 U.S.C. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). An impairment is "not severe if it does not significantly limit [one's] physical or mental ability to do basic work activities," and when medical and other evidence establish only a slight abnormality or combination of abnormalities that would have no more than a limited effect on an individual's ability to work.  *Id*. §§ 404.1522(a), 416.922(a). It is the claimant's burden to demonstrate an impairment is severe. *See Hunter v. Sullivan*, 993 F.2d 31, 35 (4th Cir. 1992). However, regardless of whether an impairment is classified as severe at step two of the sequential analysis, the limiting effect of an impairment must be considered as part of the residual functional capacity assessment. *See id*. §§ 404.1545(a)(2), 416.945(a)(2).

Generally, an error at step two is harmless so long as the ALJ finds at least one severe impairment at step two and continues the analysis and considers an impairment's effects in subsequent steps of the sequential evaluation. *See Leith v. Berryhill*, No. 1:16-cv-01565, 2017 WL 6638916, at *8 (E.D. Va. Dec. 28, 2017); *Christian v. Colvin*, No. 4:15-cv-41, 2016 WL 4056210, at *9 (E.D. Va. May 6, 2016). However, if an ALJ "improperly discounts or ignores evidence of [an] allegedly severe impairment at other steps of the sequential analysis" remand may be required. *Fountain v. Astrue*, No. CIV.A. CBD-11-1884, 2013 WL 145873, at *4 (D. Md. Jan. 11, 2013)

(noting that an erroneous step two conclusion regarding the severity of an impairment may "infect" other steps in the sequential evaluation process).

In the instant case, at step two, the ALJ recognized that Plaintiff suffers from generalized anxiety disorder and major depressive disorder, but determined that these disorders "do not cause more than minimal limitation in [Plaintiff's] ability to perform basic mental work activities and are therefore nonsevere." (R. at 25.) In evaluating Plaintiff's mental impairments, the ALJ considered the four broad areas of mental functioning set forth in 20 C.F.R. Part 404, Subpart P, Appendix 1, or the "paragraph B criteria." (R. at 25.) The ALJ considered whether Plaintiff had any limitations in (1) understanding, remembering, or applying information; (2) interacting with others; (3) concentrating, persisting, or maintaining pace; and (4) adapting or managing herself. (R. at 25-26.) The ALJ found that Plaintiff had mild limitations in each area of mental functioning. (R. at 25-26.)

In support of her conclusion that Plaintiff experienced no more than mild limitations in the four broad areas of mental functioning, the ALJ generally cited a function report drafted by Plaintiff, and Plaintiff's hearing testimony. (R. at 25-26.) The ALJ did not, however, mention Plaintiff's panic attacks, Plaintiff's treatment with Dr. Ali for her panic attacks, or that Plaintiff was prescribed Xanax and avoids social gatherings because of her panic attacks. (R. at 25-26.) Nor did the ALJ mention other evidence regarding Plaintiff's panic attacks, including Plaintiff's hearing testimony that she wakes up in the middle of the night from panic attacks (R. at 52), and that she has panic attacks when her pain is uncontrolled. (R. at 52.)

Thus, there is no indication that the ALJ considered Plaintiff's panic attacks at step two of the sequential evaluation process, or anywhere else in her decision. (R. at 25-34.) Moreover, the ALJ's failure to consider Plaintiff's panic attacks at step two was not harmless because the ALJ

did not consider Plaintiff's panic attacks at subsequent steps in her analysis. *See Leith*, 2017 WL 6638916, at *8. Because the ALJ did not consider Plaintiff's panic attacks at all in her decision, it is not possible for this Court to determine whether the ALJ sufficiently considered the severity of this impairment at step two. Accordingly, the ALJ erred at step two by failing to consider whether Plaintiff's panic attacks affected the severity of her mental limitations.

## V. CONCLUSION

For the reasons set forth above, the Court recommends that Plaintiff's Motion for Summary Judgment (ECF No. 22) be GRANTED, that Defendant's Motion for Summary Judgment (ECF No. 24) be DENIED and that the final decision of the Commissioner be VACATED and REMANDED.

Let the clerk forward a copy of this Report and Recommendation to United States District Judge John A. Gibney and to all counsel of record.

## NOTICE TO PARTIES

**Failure to file written objections to the proposed findings, conclusions and recommendations of the Magistrate Judge contained in the foregoing report within fourteen (14) days after being served with a copy of this report may result in the waiver of any right to a de novo review of the determinations contained in the report and such failure shall bar you from attacking on appeal the findings and conclusions accepted and adopted by the District Judge except upon grounds of plain error.**

/s/ MRC

Mark R. Colombell
United States Magistrate Judge

Richmond, Virginia
Date: July 30, 2021